GEORGE B. WOOD, APPELLEE, v. WALTER G. CLARK, ADMINISTRATOR, APPELLANT.

FILED FEBRUARY 23, 1899. No. 8756.

1. Judicial Sales: APPRAISEMENT. It was never the intention of the legislature that the honest valuation placed upon property for purposes of judicial sale by legally qualified appraisers should be

set aside by the courts because other persons differed in opinion as to the value of such property.

2. ——: ——. The legislature has not left it for the courts to say, when a piece of property has been sold, whether the price bid for it was two-thirds of its fair cash value, but created a tribunal to ascertain and determine its value before its sale.

3. ——: ——. The meaning of the appraisement law is that the valuation placed by appraisers upon real estate is conclusive unless it be set aside because the appraisers were not legally qualified or because they acted fraudulently in making the appraisement, or for some other equally potent reason.

4. ——: LIENS. The owner of the equity of redemption in real estate cannot be heard to object to the confirmation of a sale made thereof because an incumbrance upon the property prior to the one under which it was sold was not deducted from the valuation placed on the property by the appraisers.

APPEAL from the district court of Douglas county. Heard below before DUFFIE, J. *Affirmed.*

*Congdon & Parish,* for appellant.

*D. M. Vinsonhaler, contra.*

RAGAN, C.

Walter G. Clark, administrator, appeals to this court from a decree of the district court of Douglas county confirming a judicial sale made of certain real estate in pursuance of the foreclosure of an ordinary real estate mortgage thereon at the suit of George B. Wood. Before the sale of the property the administrator filed a motion to vacate the appraisement made thereof on the ground that the property was appraised at so low a price as to raise the presumption that the appraisement was fraudulent. This motion the court sustained and ordered a reappraisement. The property was again appraised. The administrator filed a motion to vacate the appraisement upon two grounds: (1) That the property was appraised at much less than its fair cash value, and so low as to raise the presumption that the appraisers acted fraudulently; and (2) that no application was made to the

proper officers for incumbrances existing on the property prior to the lien of the mortgage sought to be foreclosed, and in making the appraisement no such prior incumbrances were deducted. The court overruled the motion to vacate the appraisement and confirmed the sale.

1. Sixteen witnesses testified by affidavit as to the value of this property. These witnesses varied in their estimate of its value from $4,000 to $8,000. The appraisers estimated the value of this property at $5,500. How can we say that the district court erred in accepting the valuation placed on this property by the appraisers and those witnesses who made it of less value than $5,500? The value of any property is largely a matter of opinion, and so far as this record shows all the witnesses were equally competent to speak as to its value and all equally honest. This case shows the unreasonableness of requiring a court to set up its judgment as to the value of real estate as against that of appraisers who have put a valuation on it in pursuance of their duties and oaths. Doubtless the witnesses who testified in this case as to the value of this property were influenced in their judgments in favor of the parties who asked them to make affidavits,—influenced, not consciously, it may be, but nevertheless influenced. On the other hand, the appraisers were absolutely disinterested, so far as this record shows, and their judgment as to the value of this property, under the circumstances, is worth more as evidence than any number of conflicting affidavits procured by parties interested in having this sale confirmed or set aside. It was never the intention of the legislature that the honest valuation placed upon property for purposes of judicial sale by legally qualified appraisers should be set aside by the courts because other persons differed in judgment and opinion as to the value of such property. The appraisement law was enacted for the benefit of the debtor in order that his property might not be sacrificed for a nominal sum, and, therefore, it provides that before a creditor can sell his debtor's real estate to sat-

isfy his debt the property must bring at the sale two-thirds of its fair cash value. The legislature did not leave it for the courts to say, when a piece of property has been sold, whether the price bid for it was two-thirds of its fair cash value, but it created a tribunal to ascertain and determine its value before the sale occurred; and it is the meaning of the law of this state that the valuation placed by appraisers upon real estate is final and conclusive, unless it be overthrown and set aside because the appraisers were not legally qualified or because they acted fraudulently in making the appraisement, or for some other equally potent reason. (*Vought v. Foxworthy*, 38 Neb. 790.) But solely because witnesses, or any number of witnesses, differ in their judgment as to the value of the property from that placed thereon by the appraisers affords not the slightest reason for disturbing the valuation placed on the property by the tribunal created by the legislature to ascertain and fix that value.

2. The appellant is in no position to complain because the liens existing against this property, which were prior to the lien on which it was sold, were not deducted. The more prior liens which existed against the property which were not deducted from its value the more the purchaser paid for it. As an example, the only liens existing against this property at the time it was sold, and which were prior to the mortgage under which it was sold, were $615 of taxes. Since these taxes were not deducted, the purchaser took his title burdened therewith, and instead of paying $3,500 for the property, as a matter of fact he paid $4,100 for it. On what theory then can the appellant be heard to complain that his property sold for $4,100 when it should only have sold for $3,500? It was held in *Smith v. Foxworthy*, 39 Neb. 214, that the provisions of the statute requiring liens existing against property, and prior to the lien under which the property was about to be sold, to be deducted from the value placed on the property was for the benefit of the creditor, and that the owner of the equity of redemption could

not be heard to object to the confirmation of a sale made because such prior incumbrances were not deducted. The same ruling was made in the *American Investment Co. v. McGregor*, 48 Neb. 779. The decree is

AFFIRMED.